UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CASSANDRA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-335-TRM-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Cassandra Jackson ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") terminating her disability insurance benefits[1] ("DIB"). Each party has moved for judgment [Docs. 18 & 20], and filed supporting briefs [Docs. 19 & 21]. This matter is now ripe. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 18] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits; (2) the Commissioner's motion for summary judgment [Doc. 20] be **DENIED**; and (3) the decision of the Commissioner be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

**I.   ADMINISTRATIVE PROCEEDINGS**

Plaintiff previously applied for DIB on March 15, 2006, alleging disability as of February 15, 2005 [Doc. 14 ("Tr.") at Page ID # 171]. On March 28, 2008, an administrative law judge ("ALJ") found Plaintiff had the following severe impairments: disc herniation with severe stenosis

---

[1] Whether Plaintiff was receiving supplemental security income benefits that also ceased is not clear. I assume for purposes of this R&R that Plaintiff was only receiving DIB.

and degenerative disc disease of the right hip [Tr. 102]. The ALJ did not identify any other, non-severe impairments. The ALJ found Plaintiff "was unable to sustain any work physically due to the combined effects of her impairments." (Tr. 102). Accordingly, the ALJ found Plaintiff to be disabled as of her alleged onset date of February 15, 2005, through the date of the decision on March 28, 2008 (Tr. 104).

On October 24, 2014, after a continuing disability review, the Social Security Administration (the "SSA") issued a Notice of Disability Cessation to Plaintiff, informing her that the SSA found her health had improved since the original ALJ's decision on March 28, 2008 (Tr. 109-12). The March 28, 2008, date is referred to in the disability review process as the comparison point decision date ("CPD"). Plaintiff was informed she was no longer considered disabled and would stop receiving benefits by the end of the year (Tr. 109-12). On July 21, 2015, a disability hearing officer upheld this determination (Tr. 128-36).

On July 28, 2015, Plaintiff requested a hearing before an ALJ concerning the cessation of her benefits (Tr. 139). After one continuance, the hearing was held on December 20, 2016, in Chattanooga, Tennessee (Tr. 86, 29-66). On March 13, 2017, the new ALJ issued her decision, finding that as of October 1, 2014, Plaintiff was no longer under a disability as defined in the Social Security Act, therefore affirming the cessation of Plaintiff's benefits (Tr. 21). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 3-9). Plaintiff timely filed the instant action [Doc. 1].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born on December 21, 1961 (Tr. 20), making her a "younger individual age 18-44" on the alleged onset date, and 46 years old at the time of the original ALJ's decision. She

has at least a bachelor's degree, and is able to communicate in English (Tr. 53, 103, 524). She has past relevant work as a waitress, which is considered semi-skilled light work (Tr. 20). On the benefits cessation date of October 1, 2014, Plaintiff was 52 years old, which is considered "closely approaching advanced age" (Tr. 20). She was 55 as of the date of the new ALJ's decision, which is considered "advanced age."

### B. Medical Records

Plaintiff [Doc. 19 at Page ID # 1240-41] and Defendant [Doc. 21 at Page ID # 1250-52] both discuss the medical evidence they believe is relevant in their respective briefs. The ALJ discussed many of Plaintiff's medical records dating after the benefits cessation date (Tr. 15-16, 18-20). While there is no need to summarize the medical records herein, the relevant records have been comprehensively reviewed.

### C. Hearing Testimony

At the hearing before the ALJ on December 20, 2016, Plaintiff, a vocational expert ("VE"), and Plaintiff's friend testified. Although she was informed of her right to hire counsel, Plaintiff represented herself at the hearing. The the transcript of the testimony from the hearing has also been carefully reviewed (Tr. 29-66).

## III. APPLICABLE LAW AND THE ALJ'S FINDINGS

### A. Applicable Law

A person's continued entitlement to DIB must be reviewed periodically. 20 C.F.R. § 404.1594(a).[2] Benefits may be terminated upon the Commissioner's finding that "there has been any medical improvement in the individual's impairment or combination of impairments . . .

---

[2] Throughout this report, I cite the version of 20 C.F.R. § 1594 that was in effect at the time of the ALJ's decision. No substantive changes have since been made to the regulation that would affect this report or recommendation.

3

related to the individual's ability to work . . . and . . . the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1).[3] It is now well established that there is no presumption of continued disability. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(b)(6); *see also Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994)).

ALJs use an eight-step process to determine whether a DIB recipient continues to be entitled to benefits. The first two steps require the ALJ to determine whether a claimant is currently engaging in substantial gainful activity and if not, whether the claimant has an impairment or combination of impairments that meets one of the listings. 20 C.F.R. § 404.1594(f)(1)-(2). If not, then at step three, the ALJ must determine whether there has been a "medical improvement." *Id.* § 404.1594(f)(3).

"Medical improvement" is defined as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

*Id.* § 404.1594(b)(1).

To determine whether the claimant's impairments have "improved," the ALJ uses the CPD, which is defined as "the most recent favorable medical decision that you were disabled or continued to be disabled," as a reference point. *Id.* § 404.1594(b)(7). If at the time of the disability review, a claimant's impairments are less severe than they were at the CPD, then a medical

---

[3] There are exceptions to the medical improvement requirement, for example if a person receives new education or training that improves their ability to perform a wider range of jobs, but Defendant does not argue any of these exceptions apply in this case, and the ALJ did not rely on any exception. *See* 20 C.F.R. § 404.1594(d), (e).

4

improvement has occurred, and the ALJ must proceed to step four and determine whether the improvement is related to the claimant's ability to work. *Id.* § 404.1594(f)(4). This requires the ALJ to assess the claimant's current RFC and compare it to her RFC at the time of the CPD. Step five requires the ALJ to consider whether an exception applies. *Id.* § 404.1594(f)(5).

If medical improvement related to a claimant's ability to work has occurred, the Commissioner still must generally show the claimant is "currently able to engage in substantial gainful activity before [the Agency] can find that [the claimant] is no longer disabled." *Id.* § 404.1594(a). Accordingly, if the claimant's ability to work has increased due to her medical improvement, the ALJ proceeds to step six and determines whether the recipient's current impairments are "severe," or in other words, whether they "significantly" affect her ability to perform work. *Id.* § 404.1594(f)(6). If they are not severe, the recipient's disability has ended. *Id.* If they are severe, at step seven the ALJ asks whether the recipient can still perform work she has done in the past or, failing that, other work (step eight). *Id.* § 404.1594(f)(7)-(8). At this step, "the implementing regulations incorporate many of the standards set forth in regulations governing initial disability determinations." *Kennedy*, 247 F. App'x at 765 (citing 20 C.F.R. § 404.1594(b)(5), (f)(7)). "The difference, of course, is that the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. § 404.1594(b); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)).

### B. The ALJ's Findings

In this case, the ALJ identified the March 28, 2008, disability decision date as the CPD (Tr. 14). She stated that at the time of the CPD, Plaintiff had a medically determination impairment of

5

"degenerative disc disease."[4] At step one, she found Plaintiff was not currently engaging in substantial gainful activity. Next, the ALJ found that, as of October 1, 2014, Plaintiff had the following severe impairments: degenerative disc disease, diabetes, and osteoarthritis (Tr. 15). She also noted that Plaintiff had hypertension, gastrointestinal disease, carpal tunnel syndrome, and depression, but found these impairments were not severe (Tr. 15-16). At step two, the ALJ found none of Plaintiff's impairments, either singly or in combination, met or equaled the requirements of any listed impairment (Tr. 16). At step three, the ALJ found medical improvement occurred between the CPD and October 1, 2014 (Tr. 16). At step four, the ALJ found the medical improvement resulted in an increase in Plaintiff's RFC and therefore related to the ability to do work (Tr. 16-17). Specifically, the ALJ found Plaintiff had the RFC to perform "light work as defined in 20 CFR 404.1567(b) except with occasional balancing, stooping, kneeling, crouching, and crawling; no ladders, ropes, or scaffolds; and no exposure to unprotected heights or moving machinery." (Tr. 17).

As mentioned, the ALJ did not apply any exception to the medical improvement requirement, and proceeded to determine Plaintiff's severe impairments (identified above) at step six. At step seven, applying Plaintiff's October 1, 2014, RFC, the ALJ found Plaintiff could perform her past relevant work of waitressing (Tr. 20). In the alternative, at step eight, the ALJ determined Plaintiff could also perform other work existing in significant numbers in the national economy including assembly worker, production inspector, and hand packer (Tr. 20-21). These findings led to the ALJ's determination that Plaintiff's disability ended as of October 1, 2014, which resulted in the termination of her benefits (Tr. 21).

---

[4] The first ALJ actually found Plaintiff had two severe impairments—disc herniation with severe stenosis and degenerative joint disease of the right hip (Tr. 102).

## IV. ANALYSIS

Plaintiff argues this matter should be reversed and remanded for the reinstatement of benefits, or in the alternative for further proceedings. She asserts the ALJ made the following three harmful errors: (1) "The ALJ made no factual discussion in articulating specifically what improvements she believed to exist from the [CPD]." (2) "There actually wasn't any medical improvement, and the date selected by the ALJ makes no sense in the context of the facts of Record." (3) "The ALJ obtained proof after the hearing on the issue of cessation and in review of the Record the added exhibits were not proffered to the claimant for review, comment or argument." [Doc. 19 at Page ID # 1238]. Defendant counters that substantial evidence supports the ALJ's determinations that a medical improvement occurred after the CPD and that Plaintiff was no longer disabled as of October 1, 2014 [Doc. 21 at Page ID # 1250-54]. Defendant also disputes that any failure by the ALJ to proffer the exhibits does not require remand [*id.* at Page ID # 1252].

### A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (Citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

7

a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that

assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Medical Improvement

"Medical improvement 'is determined by a comparison of prior and current medical evidence.'" *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(c)(1)). As mentioned above, the determination "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)." 20 C.F.R. § 1594(b)(1). In *Kennedy*, the court found the ALJ properly pointed out the claimant's then-current functional abilities, but failed to make the required comparison. *Id.* ("While the ALJ correctly pointed out various possessed by Kennedy, . . . no effort was made by the ALJ nor any medical source to *compare* her abilities or her limitations to those possessed at the time of the initial determination." (emphasis in original)). Given that Kennedy appeared to have the same or similar functional abilities at the time of the initial determination as the ones at the time of the ALJ's review, the court found the ALJ's conclusion that she had experienced medical improvement was not supported by substantial evidence. *Id.* at 765-66. In *Taylor v. Berryhill*, No. 17-44-DLB, 2018 WL 473015 (E.D. Ky. Jan. 18, 2018), a district court affirmed a termination of benefits. The original ALJ in that case awarded benefits, but specifically recommended review for medical improvement within 12 months of the favorable decision, because Taylor was expected to improve "with appropriate treatment." *Id.* at *1. The reviewing ALJ did find Taylor had experienced medical improvement relevant to his ability to work in March 2013. In upholding the ALJ's

9

findings, the court emphasized: "Specifically, the ALJ relied on the surgical repair of Plaintiff's left rotator cuff and the medical records from mid-2012, which demonstrate that 'he was reporting no residual problems relating to his left shoulder.'" *Id.* at *6 (citation to administrative record omitted) (further noting the "ALJ provided a detailed analysis of the medical history of Plaintiff's left shoulder").

In this case, the original ALJ, who awarded benefits (hereafter, "ALJ Soto"), found Plaintiff's severe impairments were disc herniation with severe stenosis and degenerative joint disease of the right hip. ALJ Soto supported these findings with the following:

> The evidence establishes a history of chronic low back pain, with radiation to bilateral lower extremities, as documented in the progress notes of treating physician Nabil Cyleman, M.D. Dr. Cyleman referred the claimant to pain specialist Thomas Miller, M.D. in October 2005, and diagnostic testing led to diagnoses of lumbar spondylosis as well as degenerative joint disease of the right hip. Multiple treatment modalities were utilized including epidural steroid injections, physical therapy, and facet nerve block injections; however, symptoms continued. In July 2007, a repeat MRI was performed, revealing multiple findings including L5-S1 large diffuse disc herniation with marked disc space narrowing and severe bilateral foraminal stenosis with posterior displacement of both S1 nerve roots.

(Tr. 102 (citations to the administrative record omitted)). ALJ Soto credited Dr. Cyleman's opinion and found Plaintiff's allegations credible. He rejected the opinions of the State agency consultants, finding they did not adequately consider Plaintiff's subjective complaints or the combined effect of her impairments (Tr. 102-03).

ALJ Soto did not mention any psychological issues or any issues relating to diabetes or cervical neck pain. Accordingly, the discussion by the reviewing ALJ (hereafter, "ALJ Morehead") concerning these impairments is not relevant to determining whether there is substantial support for her determinations concerning medical improvement (though that

10

discussion would be relevant for evaluating her assessment of Plaintiff's current RFC). The relevant impairments for the medical improvement comparison are those relating to Plaintiff's lower back (lumbar region), and her hips. *See Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 294 (6th Cir. 2006) (affirming termination of benefits, noting that depression and respiratory problems "were not part of" earlier disability determinations, and therefore did "not alter" the review of the disability cessation determination); *Booms v. Comm'r of Soc. Sec.*, 277 F.2d 739, 744 (6th Cir. 2003) ("Once it is accepted that the plaintiff was disabled prior to January 2, 1998, the issue in this case becomes whether the plaintiff's physical impairments that resulted in the disability finding dissipated . . . .").

Under the heading, "Medical improvement occurred as of October 1, 2014," ALJ Morehead simply states: "The medical evidence supports a finding that, as of October 1, 2014, there had been a decrease medical severity of the impairment present at the time of the CPD." (Tr. 16). While it would have been helpful for ALJ Morehead to give an explanation as to what evidence demonstrates an improvement in which impairment(s) directly under this heading, I **FIND** it appropriate to consider the decision as a whole. If the decision had otherwise shown there was substantial support for ALJ Morehead's finding of medical improvement, any error in not specifying the evidence under the "medical improvement" heading would be harmless. The Sixth Circuit has endorsed this approach regarding ALJs' step three analysis for listing level impairment. S*ee Bledsoe v. Barnhart*, 165 F. App'x 408, 410-11 (6th Cir. 2006) (citation omitted); *Smith v. Colvin*, No. 3:14-CV-363-PLR-HBG, 2016 WL 3775583, at *4 (E.D. Tenn. June 22, 2016) (citing *Bledsoe*, 165 F. App'x at 411)). Applying the same principle in the medical improvement context also aligns with the Court's substantial evidence standard of review in social security cases. As

11

explained below, however, I **FIND** ALJ Morehead's medical improvement determination inadequate for more substantive reasons.

ALJ Morehead did not specifically mention Plaintiff's hip impairment anywhere in her decision, although she did note Plaintiff had a normal musculoskeletal exam in October 2013[5] and normal strength and gait in the lower extremities in February and November 2016 (Tr. 18). ALJ Morehead also noted that the consultative physical examiner, Stephen Goewey, M.D., found she had "intact range of motion in all joints in the upper and lower extremities" in August 2014[6] (Tr. 18). A normal gait, full strength, and intact range of motion in Plaintiff's hips certainly could indicate a medical improvement in Plaintiff's hip impairment from the CPD, but it is impossible to tell from the record. Neither Defendant nor ALJ Morehead cites to any proof concerning Plaintiff's gait or hip range of motion at any time closer to the alleged onset date or the CPD that could be compared to the normal findings in 2014 and 2016. ALJ Soto's 2008 decision does not help, because he did not describe any specific limitations relating to Plaintiff's hips or discuss the specifics of the opinion evidence on which he relied in finding Plaintiff had degenerative joint disease of the right hip. He simply noted Plaintiff's hip condition was revealed in diagnostic testing undertaken in 2005, and the symptoms continued after treatment (Tr. 102). Perhaps Plaintiffs' hip impairment played a very small role in ALJ Soto's disability determination.

Both decisions discuss the evidence concerning Plaintiff's lower back impairments to a greater extent than the hip impairments. In 2008, ALJ Soto described how diagnostic testing in

---

[5] Plaintiff was seeking treatment for possible complications from a breast reduction and was sent directly to the emergency room (Tr. 425-28).

[6] ALJ Morehead only assigned "partial weight" to Dr. Goewey's overall opinion, finding he failed to provide adequate postural limitations given Plaintiff's "history of neck surgery and osteoarthritis." (Tr. 19).

12

2005 led to a diagnosis of lumbar spondylosis, and a 2007 MRI showed "herniation with marked disc space narrowing and severe bilateral foraminal stenosis with posterior displacement of both S1 nerve roots." (Tr. 102).

ALJ Morehead did not address the 2005 testing, the 2007 MRI, or the opinion evidence from the prior decision, none of which appears to be in the record. She noted the following concerning Plaintiff's lumbar region: Plaintiff's musculoskeletal examination was unremarkable in October 2013, with normal range of motion and no "spinal abnormalities" (Tr. 18); Dr. Goewey observed lumbar tenderness in August 2014; Plaintiff's medical providers observed reduced range of motion in her lumbar spine in 2015 (Tr. 15); lumbar imaging in August 2015 revealed "'mild' spondylosis without significant central canal stenosis, and 'mild' stenosis at L5-S1" (Tr. 18); a February 2016 MRI revealed "multilevel degenerative disc disease with postsurgical changes and bilateral neural stenosis at L5-S1" (Tr. 15); and lumbar imaging in November 2016 revealed "no acute fracture or misalignment with stable degenerative changes and stable changes post laminectomies" (Tr. 18).

ALJ Morehead also discussed Plaintiff's activities of daily living, which primarily consist of caring for her severely disabled son and attending church, her purported lack of meaningful participation in Dr. Goewey's exam, and inconsistencies among her various reports of medication side effects (Tr. 17-18). ALJ Morehead also gave great weight to the State agency consultant's October 2014 opinion, which states that medical improvement "appears to have occurred since surgery," and that the medical evidence "would support a restricted RFC 20/10/6/6 with postural limited to occas[ional] (except climbing l/s/r never) due to previous surgery + fibromyalgia." (Tr. 560, 19).

Plaintiff argues:

13

> By the ALJ's own recitation of the evidence, the disability date of October 1, 2014 is illogical. Ms. Jackson required spinal surgery in November of 2015. The reference to the February 12, 2016, MRI that showed bilateral neural stenosis at L5-S1, supports a lack of medical improvement. Compared to [an] MRI done in the year of the prior approval her back has gotten worse, not better. She required epidural steroid injections.
>
> Based on the assembled Record, there is no reasonable way to conclude that the claimant's medical conditions "improved" between 2008 and October of 2014, or indeed, at any time since.

[Doc. 19 at Page ID # 1241-42 (citations to Tr. omitted)].

I note the November 2015 surgery related to Plaintiff's neck, not her lumbar region (Tr. 1026). Nevertheless, Plaintiff did have a second lumbar surgery[7] sometime between September and November 2016 (Tr. 33-35, 1082), and ALJ Morehead paid very short shrift to this fact. Her only mention of the second lumbar surgery is in her use of the plural "laminectomies" in her discussion of the November 2016 MRI (Tr. 18). I agree with Plaintiff—it is difficult to reconcile a finding of an enduring medical improvement as of October 2014 with the need for a second lumbar surgery in 2016. Even if the medical evidence as of October 2014 showed normal results on physical exams, ALJ Morehead was required to consider the evidence—including the surgery—through the date her decision was issued. *See* Social Security Ruling ("SSR") 13-3p, 2013 WL 785484, at *4 (2013) (ALJ "reviewing the medical cessation determination or decision will decide whether the beneficiary is under a disability through the date of the adjudicator's determination or decision.").

This is a close case. In 2008, ALJ Soto described Plaintiff's bilateral foraminal stenosis as "severe," as demonstrated by an MRI showing a "large diffuse disc herniation with marked disc

---

[7] The first lumbar surgery took place on September 6, 2007, prior to the CPD (Tr. 559).

space narrowing," and "posterior displacement of both S1 nerve roots." (TR. 102). There does appear to be a lessening of the severity of stenosis in the later imaging studies discussed by ALJ Morehead.[8] Nevertheless, severe/marked findings concerning Plaintiff's lumbar spine persist long past October 2014, ultimately requiring a second lumbar surgery, with one physician noting the foraminal stenosis in 2015 was not significantly changed from 2008, only a few months after the CPD. And, the first lumbar surgery took place about six months prior to the CPD, so any improvement from that surgery presumably was taken into account in ALJ Soto's disability decision.

ALJ Morehead's characterization of Plaintiff's activities of daily living as "active" and "diverse" is fairly well-supported in the record, although when she concluded Plaintiff "provides near total care for her son" (Tr. 19), she did not address Plaintiff's testimony that the child "goes to Orange Grove, so he gives me enough time that I can actually take my meds, that a lot of times knock me out, and I can sleep through that error" (Tr. 43). There was no further explanation of how long he was at Orange Grove, what care they gave him versus what Plaintiff was responsible for, etc. Additionally, Plaintiff testified her son was born in 2001, therefore her activities of daily living at the time of the CPD may have been similar to the ones described by ALJ Morehead, but maybe not. ALJ Soto's decision does not address her activities of daily living, nor were they discussed in the 2008 hearing, perhaps because counsel did not represent Plaintiff.

---

[8] These studies showed no "residual/recurrent canal stenosis" and "mild/moderate bilateral foraminal narrowing," with "broad-based bulging and bilateral facet degenerative changes" and "foraminal stenosis . . . not significantly changed from the prior exam in 2008" (Tr. 936, Aug. 2015 MRI); "marked disc height loss," "bilateral joint hypertrophy," and "mild. . . disc bulge causing bilateral neural foraminal stenosis" (Tr. 931-32, Feb. 2016 MRI); "severe degenerative disc disease at L5-S1 with marked loss of disc height, marginal osteophyte formation and sclerosis of the vertebral endplates with underlying vacuum disc phenomenon" (Tr. 1081, Nov. 2016 MRI).

On balance, I **FIND** the ALJ's determination that Plaintiff experienced a medical improvement—as to her hip, her back, or both—is not supported by substantial evidence. Because this is a close case, with the imaging studies possibly showing improvement and Plaintiff engaging in what might be significant activities of daily living, I **RECOMMEND** remand for further proceedings rather than for an immediate reinstatement of benefits. *Cf. Kennedy*, 247 F. App'x at 768-69 (no need for further proceedings where "evidence of medical improvement is lacking" and Commissioner had the burden of proof). On remand, the ALJ should be directed to explain what specific impairment has improved, taking into account the second lumbar surgery and how it affects the weighing of the medical opinions, and to make a proper comparison of Plaintiff's abilities or limitations as of the cessation date (and beyond) versus at the CPD, with reference to specific facts in the medical record.

### C. The ALJ's Consideration of Proof Submitted after the Hearing

Plaintiff points out ALJ Morehead added Exhibits B26F to B29F to the record after the administrative hearing. Plaintiff argues she did not have an opportunity to "make comment, argument or objection" to this evidence, which she contends constitutes harmful error [Doc. 19 at Page ID # 1242-43]. Plaintiff fails to adequately develop her argument on this issue. She cites two regulations: 20 C.F.R. § 404.949, which allows parties to make written statements and oral arguments to ALJs; and 20 C.F.R. § 404.950, which provides that parties may waive their right to appear at a hearing, describes what constitutes relevant evidence at a hearing, and allows parties and ALJs to subpoena proof. Why these regulations require a finding of harmful error is not obvious from the plain meaning of their text, and Plaintiff fails to give even the slightest explanation in support of her argument. Accordingly, she has waived it. *See Woods*, 2009 WL 3153153, at *7 (citing *McPherson*, 125 F.3d at 995-96). Moreover, if the above recommendation

16

concerning remand for lack of substantial evidence regarding medical improvement is adopted, the issue concerning post-hearing evidence would be **MOOT**.

V.  **CONCLUSION**

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[9] that:

1) Plaintiff's motion for summary judgment [Doc. 18] be **GRANTED IN PART** to the extent it seeks remand to the Commissioner and **DENIED IN PART** to the extent it seeks an award of benefits.

2) Commissioner's motion for summary judgment [Doc. 20] be **DENIED**.

3) Commissioner's decision denying benefits be **REVERSED AND REMANDED** for further proceedings consistent with this report and recommendation.

s/ Susan K. Lee
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[9] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).